[No. 6891. Decided November 22, 1907.]

GEORGE B. LITTLEFIELD, *Appellant*, v. THOMAS DAWSON
et al., *Respondents*.[1]

BROKERS—AUTHORITY TO SELL—CONTRACTS—CONSTRUCTION—SPE-
CIFIC PERFORMANCE. A written authority to a broker giving exclusive
power to sell certain described property and agreeing to convey the
same to any purchaser designated, upon compliance with the speci-
fied terms, authorizes the broker to make a binding contract of sale
which may be specifically enforced, where the agent's contract is
clear and specific in its terms.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered April 25, 1907, upon sustaining
a demurrer to the complaint, dismissing an action for the
specific performance of a contract to convey real estate. Re-
versed.

*James C. Moody*, for appellant.

*Perry & Hanson*, for respondents.

HADLEY, C. J.—The trial court sustained a general de-
murrer to the complaint in this action, and the plaintiff re-
fusing to plead further, judgment was entered dismissing the
action. The plaintiff has appealed, and the sufficiency of the
complaint is the sole question presented by the appeal. The
complaint alleges that the appellant entered into a contract
with the respondents through the latter's duly authorized
agent, to purchase certain described lots in the city of Seattle,
of which respondents were the owners. The contract executed
by the alleged agent was in writing and as follows:

"Seattle, Washington, December 4th, 1906.

"Received from George B. Littlefield the sum of $500.00
being on account of the purchase price of lots 27, 28, 29,
30, block 8, Rainier Boulevard Addition, now owned by

[1]Reported in 92 Pac. 428.

Thomas Dawson, the purchase price of which is $17,000.00 the balance being payable as follows:

"$3,500.00 cash on delivery of deed, $4,000.00 in one year at 6 per cent. interest, $7,500.00 in three years at 6 per cent. interest, $1,500.00 according to a mortgage now on said property. All assessments may be assumed by purchaser, and if so assumed, to be deducted from the purchase price of $17,000.00.

"It is agreed that Thomas Dawson shall furnish an abstract of title to said property and in case title is not perfect and cannot be made perfect within a reasonable length of time, then this deposit shall be returned to George B. Littlefield, the purchaser. M. Francis Kane."

It is further alleged that the above contract of said agent was authorized by respondents through a contract in writing as follows:

"Nov. 5, 1906.

"To M. Francis Kane, In consideration of the sum of one dollar to me in hand paid and of the services to be performed by you in endeavoring to effect a sale of the property, described on the reverse side of this card, we do hereby give and grant unto you for a period of twenty days from date hereof, and thereafter until withdrawn by ten days written notice the exclusive right to sell said property, and we agree to convey the same, or cause the same to be conveyed by good and sufficient Warranty Deed to the person or persons designated by you. The price of said property to be $17,000.00 and upon the following terms: $4,000.00 cash, $4,000.00 one year, $9,000.00 at 6 per cent. three years, on or before, assessments to be assumed, and mortgage of $1,500.00 out of purchase price.

"We further agree in case of sale to furnish an abstract of title to said property, duly certified to date by a competent abstractor, and to pay you a commission of 5 per cent. upon the purchase price.

"Thomas Dawson,
"Catherine X Dawson, Owners.
"her mark."

On the back of the contract was indorsed the description of the property. It is alleged that respondents refused to com-

ply with their contract, and specific performance of the terms of the contract is sought.

It is stated in appellant's brief that the trial court based its ruling upon the decision of this court in *Carstens v. Mc-Reavy*, 1 Wash. 359, 25 Pac. 471. If such was the case, it must have been the court's view that the authority of respondents' agent was limited to mere authority to find a purchaser, and that it did not include the power to make a contract for the sale which would bind respondents. A power may be insufficient to authorize an agent to convey real estate and yet it may be sufficient to authorize the agent to make a contract for the sale of it, specific performance of which will be enforced in equity. 1 Am. & Eng. Ency. Law (2d ed.), 1007.

The written authority to the agent in this instance conferred upon him the exclusive right to sell the property, and expressly recited that "We agree to convey the same or cause the same to be conveyed by good and sufficient warranty deed to the person or persons designated by you." If the authority to make a binding contract was not included within the terms of the agency, of what force are the above words? Their effect is to state that the principals thereby obligated themselves to convey to the person that should be designated by the agent and who should comply with the terms specified. The principals could not so obligate themselves unless the agent was at the same time authorized to carry over and connect this binding obligation with the purchaser and thus make it effectual. The very words of the written authority negative the idea that the principals were to be further consulted as to the personnel of the purchaser or otherwise, or that they were to ratify the acts of the agent before they would be bound. Their agreement was absolute to accept the purchaser the agent should designate and to convey to such purchaser upon his compliance with their specified terms. We find nothing in the case of *Carstens v. McReavy, supra,* inconsistent with the above views. The authority to the agent in that case was limited

to the power to negotiate a sale, and there was no provision in the contract of agency by which the principals bound themselves to convey to the purchaser that should be designated by the agent, as in the case at bar.

Appellant argues that the trial court in effect ignored the recent case of *Peirce v. Wheeler*, 44 Wash. 326, 87 Pac. 361. We do not see that that case is at all applicable here. It was simply held there that the statute, Laws 1905, page 110, chapter 58, means that the contract of agency must be in writing in order to sustain the recovery of commissions by the agent; but that it does not change the long-established rule that an agent may be orally authorized to make a contract binding upon his principal for the sale of lands. It was held that, if the agent so orally authorized shall himself execute a written memorandum or agreement concerning the sale, which, if executed by the principal, would be sufficient to satisfy the statute of frauds, it will support specific performance.

There is no inconsistency between the cases cited. In *Carstens v. McReavy* the court found that the final authority of the agent was in writing, but that the authority went no further than to confer power to find a purchaser. Under such circumstances the agent executed a written contract for the sale, attempting to bind his principal, and it was held that he exceeded his authority. In *Peirce v. Wheeler* the agent was not authorized in writing, but he procured an offer to purchase, accepted it subject to confirmation by his principal, received $500 on account of the cash payment, executed and delivered a written memorandum signed by himself, informed his principal what he had done, the principal approved the same, and the agent thereupon informed the purchaser of such approval. Under such circumstances the principal ratified the act of the agent in making the written contract for sale, and was estopped to thereafter urge lack of authority. In the case at bar, however, it seems to us that

all the ordinary elements necessary to satisfy the statute and to support specific performance clearly exist. The authority to the agent was in writing and empowered him to make a binding contract of sale. The agent followed this by a written contract for the sale which is clear and specific in its terms. It was therefore error to sustain the demurrer to the complaint.

The judgment is reversed, and the cause remanded with instructions to overrule the demurrer.

RUDKIN, DUNBAR, ROOT, MOUNT, and CROW, JJ., concur.