[No. 16386.   Department One.   June 10, 1921.]

NORTH END WORKERS SUPPLY COOPERATIVE ASSOCIATION, *Appellant,* v. RUDOLPH SABLICH *et al.,* *Respondents.*[1]

WILLS (11)—DISTINGUISHED FROM OTHER DISPOSITIONS OF PROPERTY. A written instrument reciting that it is "Last writing or testament. Leaving all my estate, Rudolph Sablich, these two lots located  .  .  .  .  to J. Zatkovich, and he out of that must pay," (certain named beneficiaries), shows an intent to make a will, and not an authorization to sell as agent of the owner.

PRINCIPAL AND AGENT (29, 34)—EXPRESS AUTHORITY—POWER TO SELL—KNOWLEDGE. An agreement to sell certain real estate by an alleged agent, reciting that the owner of the lots had gone abroad and left a signed statement to sell, "but said signed statement is not a full power of attorney", was sufficient to indicate to the purchaser the limit of such agent's authority.

SAME (8)—EVIDENCE OF AGENCY—DECLARATION OF AGENT. Under the rule that neither agency nor the scope of agency can be established by the declarations of the alleged agent, a recital of one's self "as agent" of the owner in a notice relating to certain real estate would not constitute proof of agency.

IMPROVEMENTS (2)—STATUTORY PROVISIONS. In an action for specific performance of a contract for sale of land, which was unenforceable by reason of the lack of authority of an alleged agent to sell, the plaintiff would not be entitled to recover the value of improvements placed on the land, since Rem. Code, §§ 797-799, allow such recovery only in possessory actions for the recovery of real property upon which permanent improvements have been made.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 17, 1920, upon findings in favor of the defendants, in an action for specific performance.   Affirmed.

*P. L. Pendleton,* for appellant.
*Remann & Gordon,* for respondents.

[1]Reported in 198 Pac. 738.

Holcomb, J.—Rudolph Sablich, respondent, came to America about the year 1906. He in time acquired title to two lots in Tacoma.

In November, 1913, being about to depart for his old home on a visit, he made provision for the disposal of his estate, should anything happen or befall him. This instrument was dated November 26, 1913, and being in a foreign tongue, was translated by an interpreter, as follows:

"Tacoma, Washington 26th November, 1913. Last writing or testament. Leaving all my estate, Rudolph Sablich, these two lots located on 49th street, leaving to J. Zatkovich, and he out of that must pay Brother Matt Sablich $100, his two children $50 each and to the sisters each $50, and he also to sister's girl Tortzi $50, and when John Satkovich pays all of these, which amount to $350, and then these two lots remain his, and the same must be paid within one year; and now there, these two lots is all done, three witnesses, Witness M. Lucic, Winko Lucic, also Winko Zardas, owner Sablich, Rudolph."

Respondent left very shortly for Europe, leaving the above instrument and his deed and abstract with his friend John Zatkovich, to whom his affairs had been entrusted in that instrument.

While he was abroad, the European war came on and he could not return to America. He returned to America at the first opportunity with his wife, whom he married while abroad, and came direct to Tacoma about August or September, 1920.

In May, 1919, appellant company, desiring the property in question, lots 3 and 4, block 24, Seaview addition, entered into negotiations with John Zatkovich for their purchase. Appellants and Zatkovich executed a writing as follows:

"Received of North End Workers Supply Co-Operative Association, a corporation, the sum of $250 as earnest money and part payment of lots 3 and 4, block 24, Seaview addition to Tacoma, Washington, the agreed purchase price is $500, there being a balance owing of $250. It is agreed that the owner of the lots, Rudolph Sablich, has gone abroad and left a signed statement to John Zatkovich to sell the lots, but said signed statement is not a full power of attorney, and the deed of conveyance will be sent to the owner abroad for signature, and in the meantime the buyers may have peaceable possession of said lots, and work on the same. On return of the deed, if the title is good, the North End Workers Supply Association shall pay the remaining $250. If the title is not good and cannot be made good, the $250 shall be returned to the company as soon as ascertained that the title is not good. If after five months the owner does not be found and sign a deed, the seller or agent agrees to give the company a bond for a deed, to protect the company from loss in case the owner after the company improves the property refuses to sign.

"Dated May 23, 1919.

"Rudolph Sablich,
"Accepted:                      By John Zatkovich.
"North End Workers Supply Association,
   "By Albert Luisch, President.
   "Attest: Frank Cvitanovich, Secretary."

Zatkovich had not heard from Rudolph Sablich, the owner, for about five years. He testified: "I offered a price to sell the property because I did not know really if Rudolph Sablich lived or not; I figured it would be a good idea to sell the property and give the money to his folks back in the old country."

A deed was mailed to respondent which was never returned, but in June, about a month after the execution of the alleged contract, Zatkovich received his first knowledge of respondent for five years, in the form of

a letter written before the deed could reach respondent. Within two days after gaining knowledge that his friend was alive, he caused notice to be served on appellants not to proceed with the building on the lots. The notice was as follows:

"Tacoma, Washington, June 11, 1919.
"North End Workers Co-Operative Association, City.

"Gentlemen: On May 23, 1919, as agent for Rudolph Sablich, the owner of lots 3 and 4, block 24, Seaview addition to Tacoma, I entered into a certain agreement with you, signed upon your behalf by Albert Luisch, president, and Frank Cvitanovich, secretary, a copy of which you undoubtedly have, and to which reference is hereby made for contents thereof.

"I desire to notify you that I have just received a letter from Rudolph Sablich which shows that he was alive on February 24, 1919. As you are aware, I did not have full power of attorney to sell these lots for the owner, and the signed statement which I have, signed by the owner, I have been informed is in the nature of a last will, giving me authority to sell the lots in the event of the death of Rudolph Sablich, and not under other conditions. In this letter, which I recently received from him, he tells me that he is married. This, I am informed, revokes the will given to me, so that my authority is entirely gone to, in any manner, represent the owner. I am therefore tendering back to you herewith the two hundred fifty dollars ($250) paid as earnest money and part payment on the lots, and ask that the agreement be cancelled. If you do not desire to accept it, I am willing to send the deed to Rudolph to be executed by himself and his wife. If they, or either of them refuse to sign, however, I notify you that I will not be responsible to your company in any manner for any loss that you may sustain by reason of improvements placed by you upon the property, or in any other manner. You are notified that, so far as I am concerned, if you proceed to improve the property, you do so at your own peril, with knowledge that the property

does not belong to you, and that the owner has not agreed to sell and convey it to you.

"If you do not accept the two hundred fifty dollars ($250) herewith tendered to you, please be advised that I am holding the same for you and subject to your order, and I notify you that I will personally not give to you a bond for a deed, reference to which is made in the contract referred to, entered into on May 23, 1919.

(Signed) "John Zatkovich."

At that time some grading had been done and a small quantity of lumber had been delivered on the ground, but no construction had been commenced, and no evidence of value of either grading or lumber was offered. Appellants ignored the notice, erected their building, and have continuously occupied it since its completion in the fall of 1919.

When respondent arrived in Tacoma in the early fall of 1920, he learned for the first time of the possession of appellant and the erection of the building. They tendered him $250 and demanded a deed. He refused and appellants commenced this action for specific performance, based on the instrument executed by Zatkovich to it.

All the authority Zatkovich had was the writing given by Sablich prior to his departure for Europe. Although appellant made repeated attempts to get Zatkovich to admit that he had some other authority than that written instrument, Zatkovich continually asserted that he had no other authority, and the existence of the written instrument would tend to establish the authority of Zatkovich as that contained in the written instrument, and none other. That instrument, while it was very imperfectly executed, was undoubtedly intended as a will. It attempted to give the property to Zatkovich with certain testamentary dispositions to others. There was nothing in the instrument authorizing Zat-

kovich to sell and account to Sablich for the proceeds. It said: "these two lots located on 49th street, leaving to J. Zatkovich, and he out of that must pay," etc.; and that when the amounts specified to be paid, aggregating $350, were paid as therein provided, then the two lots remained his (Zatkovich's). Appellant concedes that the instrument of 1913 was not a power of attorney authorizing Zatkovich to make a deed, but claims that, under our decision in *Littlefield v. Dawson*, 47 Wash. 644, 92 Pac. 428, an agent may be even orally authorized by his principal to make a contract binding upon the principal for the sale of lands. The case cited does not so decide, but decided that the agent, having made an oral contract under a written contract of agency for the sale of specific lands, and the contract having been acted upon and ratified by the agent's principal, that the vendee could enforce performance. This case is not like that in any particular. In that case the agent's contract creating his authority contained this provision:

"We agree to convey the same or cause the same to be conveyed by good and sufficient warranty deed to the person or persons designated by you (the agent)".

And the court asked:

"If the authority to make a binding contract was not included in the terms of the agency of what force are the above words."

There was no such authority in the instrument given by Sablich to Zatkovich in 1913.

The instrument received by appellant in negotiating for the lots contained the clear statement that the owner of the lots, Sablich, had gone abroad and left a signed statement with Zatkovich to sell the lots, "but that said signed statement is not a full power of attorney." This

indicated to appellant the limit of Zatkovich's authority; and furthermore, Luisch, one of the witnesses to the instrument of 1913, was also one of the officers of appellant, and a witness for appellant at the trial of this case, and testified that he knew the contents of the instrument of 1913, and endeavored to establish that Sablich made Zatkovich his agent to sell the real estate. That being the situation, appellant must be held to have had exact knowledge of the limitations of the authority of Zatkovich, and that Zatkovich could not convey title to the lots unless Sablich was dead, and then convey them as executor.  Conceding, for argument's sake, that the instrument would have been effective as a will had Sablich died, he did not die, and the instrument never became effective.

When Zatkovich gave his notice to appellant that the contract theretofore executed and delivered by him for the sale of the lots to appellant was at an end, he designated himself as agent for Rudolph Sablich.  Upon this appellant seems to contend that, Zatkovich having declared himself agent, it is proof of his agency.  It is fundamental law that one cannot establish agency, nor the scope of agency, by declarations of the alleged agent.

Zatkovich gave prompt notice to appellant of the fact of Sablich's being alive, and of his (Zatkovich's) incapacity to convey the real estate; tendered the two hundred fifty dollars he had received as earnest money back, and demanded that the agreement be cancelled. At that time appellant had done but very little work towards improving the premises by construction of the building, and had only a small amount of material upon the premises.  Appellant chose to ignore the notice, and proceed at its own risk to erect the building upon the premises.

Upon this situation, appellant seems to contend that it is entitled to recover the value of the improvements under the betterment statutes, Laws of 1903, p. 262, Rem. Code, §§ 797-8-9. Those statutes were enacted in connection with the statutes providing for possessory actions for the recovery of real property upon which permanent improvements have been made, etc. This is not a possessory action under the statutes, but an action for specific performance of a contract, and the betterment statutes can in no way apply.

The judgment of the trial court is right, and is affirmed.

PARKER, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.