[No. 48528–3.   En Banc.   December 2, 1982.]

CERTIFICATION FROM THE
BANKRUPTCY COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF WASHINGTON
IN
*In the Matter of* JOHN WASHBURN,
ET AL, *Debtors.*

JOHN WASHBURN, ET AL, *Plaintiffs,* v. CENTRAL
PREMIX CONCRETE COMPANY, ET AL,
*Defendants.*

*Shulkin, Hutton & Bucknell, Inc., P.S.,* by *Zachary Mosner,* for plaintiffs.

*Peters, Schmalz, Leadon & Fowler, P.S.,* by *Jay R. Inslee,* for 'defendants.

DORE, J.—The Bankruptcy Court of the United States for the Eastern District of Washington certified to this court the following issue: Does a creditor have a vendor's lien under RCW 6.12.100 upon a residence subject to a declaration of homestead, where the residence was sold by the debtor to the creditor on an offer of purchase[1] which was thereafter rescinded, and a debt resulted from the debtor's failure to repay part of the creditor's down payment on the purchase price? We answer in the affirmative.

The creditors, Edwin and Muriel Kline, entered into an offer to purchase for $101,000 the residence of the debtors, John and Kathy Washburn, in April 1979. The agreement provided for a $27,000 down payment. The Washburns also agreed to complete a portion of the construction on the new home. The Klines took possession of the home shortly thereafter and remained for 3 months. However, in the interim, the sale was not closed and no real estate contract reflecting the terms of the offer of purchase agreement was signed by the parties.

After 3 months, the parties agreed to a rescission of the transaction, based partly upon the Washburns' inability to complete the agreed improvements on the home. At that time, the Washburns returned to the Klines $10,000 of the $27,000 down payment. The Klines then transferred possession of the home to the Washburns and the latter moved back into the home. This transfer of physical possession took place before the recording of a contemplated deed from the Washburns to the Klines, and no other documents were prepared or recorded to reflect the transfer of pos-

---

[1]Commonly characterized as an earnest money agreement.

session.

The Washburns failed to pay the Klines the remaining $17,000 of the down payment, and compensate the Klines for the value of improvements on the home during the Klines' possession. The Klines subsequently initiated a lawsuit against the Washburns, and on July 11, 1980, obtained a judgment of $22,167.25 against them in Yakima County Superior Court. The Washburns then filed a petition of bankruptcy and simultaneously recorded a declaration of homestead on the subject home. The order for relief in bankruptcy court was filed on July 14, 1980. On July 13, 1981, the bankruptcy court filed an agreed order on preference litigation, ordering that the portion of the judgment lien entered in Yakima County Superior Court above $12,000 was deemed a preference. The bankruptcy court then certified the issue to this court, as to whether the $12,000 judgment obtained against the Washburns was a vendor's lien pursuant to RCW 6.12.100 which provides:

> *The homestead is subject to execution or forced sale in satisfaction of judgments obtained:*
>
> (1) *On debts secured by* mechanic's, laborer's, materialmen's or *vendor's liens upon the premises;*
>
> (2) On debts secured by purchase money security agreements describing as collateral a mobile home located on the premises or mortgages on the premises, executed and acknowledged by the husband and wife or by any unmarried claimant.

(Italics ours.)

██ This court has recognized that a judgment based upon the purchase price of realty is in the nature of a vendor's lien, within the meaning of RCW 6.12.100. *Thompson v. Hunstad,* 53 Wn.2d 87, 89, 330 P.2d 1007 (1958), citing *Lyon v. Herboth,* 133 Wash. 15, 233 P. 24 (1925) and *Lenz v. Harding,* 186 Wash. 642, 59 P.2d 743 (1936). In *Lyon,* the vendor was permitted to execute on the land, in spite of a prior declaration of homestead by the vendee, the court saying, at page 19:

> At the common law the mere fact of the sale seems to have given the vendor an equitable lien on the property

for the purchase price. No recordation of it was necessary. It was a secret lien, and we held in [*Smith v. Allen,* 18 Wash. 1, 50 P. 783 (1897)] that such a lien was inconsistent with our recording acts. But the lien here sought to be enforced is not the secret equitable lien which was condemned. It is one by virtue of a judgment which respondents obtained for the purchase price. The vendor's lien mentioned in the homestead statute is not the kind of lien which we have held does not exist, but is the very kind that is here sought to be enforced. That statute cannot have any other meaning than that a homestead is subject to judgments based upon the purchase price. It seems to us plain that the legislature intended that it should be the public policy of this state that no one should be permitted to hold a homestead as against the person from whom he had purchased and to whom he had not paid the purchase money. Until the appellants obtained their judgment they did not have any kind of lien, but when it was obtained it became an enforcible lien on the respondent's homestead. There is no reason why a judgment representing the purchase money may not be as valid a lien against a homestead as a mortgage given by the purchaser representing the purchase money.

The Washburns contend the Klines had no interest in the realty which could have been conveyed to the Washburns, making Klines vendors. In *Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 567 P.2d 631 (1977), however, we held that a real estate contract vendee's interest is "real estate" within the meaning of the judgment lien statutes in RCW 4.56. In the present case, prior to rescission, the Klines had an identifiable interest in the realty. Additionally, the bulk of the incidents of ownership were in their hands, as they were in possession of the residence for 3 months, had paid the full purchase price which was due prior to closing and had the legal right to compel the transfer of the deed by means of a specific performance suit. *Littlefield v. Dawson,* 47 Wash. 644, 92 P. 428 (1907); *Edwards v. Beck,* 57 Wash. 80, 106 P. 492 (1910).

The Washburns also argue that the absence of a deed or contract from the Klines to the Washburns upon rescission necessarily precludes the creditors from having a vendor's lien. The broad nature of the vendor's lien under RCW 6.12.100, however, is evidenced by *Adams v. Rowe,* 39 Wn.2d 446, 236 P.2d 355 (1951). In that case, the creditor obtained a money judgment as his owelty of partition in a partition action in which most of the property was awarded to the debtor. The debtor then filed a homestead and sought to cut off the creditor's judgment lien. The court rejected this position and held that the judgment was an equitable lien in the nature of a vendor's lien. The court considered the judgment lien as the equivalent of a purchase price owed by a purchaser to a vendor, even though no deed or contract had changed hands.

Similarly, in the present case, the Klines effectively transferred or released their interest in real property to the Washburns even though this was not documented by means of real estate instruments depicting conveyance of ownership. The absence of such instruments does not blind the law to the fact that the Washburns have been enriched, for they have been given an equity in a home for which they have not paid.

## CONCLUSION

The vendor's lien is an equitable principle, such that a person who has secured the estate of another and has not paid for it ought not, in good conscience, be allowed to keep it. The homestead statute cannot be used by the Washburns to deprive the Klines of the remaining down payment amount they were to have received to complete a rescission, which allowed the Washburns to claim a homestead.

We hold that the Klines have a vendor's lien under RCW 6.12.100 and that they are entitled to execute against the Washburns' homestead.

Rosellini, Stafford, Utter, Dolliver, Williams, Dimmick, and Pearson, JJ., and Cunningham, J. Pro Tem., concur.