[No. 25985. *En Banc.* July 13, 1935.]

CARL LENZ *et al., Appellants,* v. EDWARD CLARE HARDING *et al., Respondents.*[1]

*Philip Tindall,* for appellants.
*Carl F. Christophersen,* for respondents.

MITCHELL, J.—This action was brought by Carl Lenz and wife against Edward Clare Harding and wife for a judgment for the balance due on a promissory note, dated August 8, 1932, in the sum of $580, together with interest and costs, given by the defendants as

[1]Reported in 59 P. (2d) 743.

part payment of the purchase price of lot 3, block 10, Westholme Addition to the city of Seattle, Washington; and for a judgment establishing and foreclosing a vendor's lien against the property and ordering it to be sold at sheriff's sale to satisfy the vendor's lien, together with costs and expenses of suit. The trial resulted in findings of fact and conclusions of law in favor of the defendants. Judgment was entered dismissing the action with prejudice. The plaintiffs have appealed.

The case is presented here on the findings of fact, which, in substance, are as follows:

On April 10, 1929, appellants were the owners of the real property involved; and on that date, for a valuable consideration, they gave an earnest money receipt to the respondents, who agreed to purchase the property upon terms and conditions therein expressed. The appellants, at their own expense, were to construct a building on the lot, and, to raise funds required for the construction of the building, they, on April 26, 1929, executed a note secured by a mortgage on the real property in favor of Fidelity Savings and Loan Association in the sum of $2,250.

On July 2, 1929, appellants entered into a written contract with the respondents, agreeing to sell and the respondents agreeing to buy the lot and house for $3,505, of which amount the sum of $350, inclusive of the earnest money receipt, was paid in cash, $905 to be paid in monthly installments of thirty dollars each, with interest at seven per cent per annum, and the purchaser was to, and did, assume and agree to pay the mortgage indebtedness to the Fidelity Savings and Loan Association.

Respondents took possession of the property about the date of the contract and have had possession of it at all times since.

After the real estate contract was entered into, respondents made certain payments thereunder, out of which the appellants made payments due on account of interest on the note and mortgage to the Fidelity Savings and Loan Association. During the summer of 1932, payments due on the mortgage became delinquent, and the parties to the real estate contract became concerned regarding a threatened foreclosure of the outstanding mortgage. Discussions were had between them, which resulted in an agreement that the appellants, owners of the property, should convey it to the respondents by a quitclaim deed, and that respondents, in payment therefor, should execute their promissory note to the appellants for the balance due according to the terms of the real estate contract.

"The purpose of having plaintiffs [appellants] execute said deed was to enable defendants [respondents] to file a homestead thereon and thus keep possession of the property during the period of redemption in the hope that they might be able to refinance the mortgage and save their investment in the property; that this purpose was explained by counsel for defendants to plaintiff Carl Lenz, who was and is an intelligent man accustomed in some measure to the perusal, examination and execution of legal instruments, and his testimony does not suggest that he did not fully understand the difference in the legal position which would result from the execution of the deed, and there is no showing of fraud, overreaching or undue influence on the part of defendants or their counsel in procuring the deed."

Pursuant to that understanding, respondent Edward Clare Harding executed and delivered his interest-bearing promissory note to Carl Lenz in the sum of $580, bearing date August 8, 1932, the amount then agreed to be owing under the real estate contract, and the appellants, in consideration therefor, on August 9, 1932, executed and delivered to the respondents a quit-

claim deed conveying the property in question. Respondents filed and had the deed recorded in the county auditor's office on the same day they received it, and on that date they filed and recorded in the county auditor's office their duly acknowledged declaration of homestead on the property.

Thereafter, November 1, 1932, the Fidelity Savings and Loan Association commenced suit on the note and mortgage held by it, which suit resulted in a judgment of foreclosure entered August 8, 1933, and a sheriff's sale of the property on September 16, 1933, to the plaintiff in the mortgage foreclosure suit. After the sheriff's sale, there remained a deficiency judgment in the sum of three hundred dollars against the parties to the present action, they being defendants in the foreclosure action.

On August 15, 1933, after the entry of the judgment in foreclosure, respondents applied to the Home Owners Loan Corporation for a loan with which to refinance the mortgage indebtedness, then in judgment, in favor of the Fidelity Savings and Loan Association. The application was granted, and on August 8, 1934, respondents executed and delivered a mortgage on the property in the sum of $2,395 to the Home Owners Loan Corporation, the proceeds from which were used to satisfy the judgment in favor of the Fidelity Savings and Loan Association in its foreclosure suit, including the deficiency judgment.

"While defendants' application for said loan was pending plaintiff Carl Lenz stated to an officer of said Home Owners Loan Corporation having the matter in charge that he was 'out of the property' or words to that effect, and disclaimed that he longer had any interest in the property, stating that his 'equity' was represented by defendants' promissory note."

On January 25, 1935, respondent Edward Clare Harding filed his petition in bankruptcy in the district

court of the United States for the western district of Washington, northern division, and was on that date adjudged to be a bankrupt. In that proceeding, Harding claimed the property involved in the present action exempt as a homestead. The appellants in this action filed in the proceeding in bankruptcy a claim on the note held by them against the bankrupt, stating therein a reservation of a vendor's lien against the real property involved in this action. Respondent has not been allowed his discharge in bankruptcy; a stay in that regard having been ordered by the court in the bankruptcy proceeding until Lenz and wife could litigate in the state courts any alleged vendor's lien or equitable claim against the real property, for which litigation the note was allowed to be withdrawn from the bankruptcy case to be used in the state courts.

The present action was commenced after respondent filed his petition in bankruptcy.

Appellants are now the owners and holders of the $580 note given to them by the respondents, no part of which has been paid, except $14 on August 8, 1933.

■ The principal question here is whether a vendor's lien on real estate for unpaid purchase money is recognized in this state, where, as in this case, real property has been conveyed by absolute deed and no such lien has been reserved by the terms of the deed of conveyance or by a separate instrument between the parties.

"The policy deduced from the uniform course of legislation in this state, relative to conveyances of real estate and the title thereto, has been to enlarge the scope of the recordation of all instruments affecting real estate." *Smith v. Allen,* 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R. A. 82.

"The policy of our registry acts is against secret liens." *Hill Estate Co. v. Whittlesey,* 21 Wash. 142, 57 Pac. 345. It has been held uniformly in this state

that a vendor's lien cannot exist or be asserted under our law. *Smith v. Allen,* 18 Wash. 1, 50 Pac. 783, 63 Am. St. 864, 39 L. R. A. 82; *Hill Estate Co. v. Whittlesey,* 21 Wash. 142, 57 Pac. 345; *Ihrke v. Continental Life Ins. etc. Co.,* 91 Wash. 342, 157 Pac. 866, L. R. A. 1916F, 430; *Jacobson v. Chee Lumber Co.,* 128 Wash. 436, 223 Pac. 12; *Lyon v. Herboth,* 133 Wash. 15, 233 Pac. 24; *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927; *Atkinson v. Melcher,* 160 Wash. 94, 294 Pac. 567.

Appellants rely on *Lyon v. Herboth,* 133 Wash. 15, 233 Pac. 24. In that case, the question was not whether a vendor's lien exists in this state, but *"whether a homestead is subject to a purchase money judgment;"* the judgment reciting that it was given on account of the purchase price of the land. In that case, construction was being given to Rem. Rev. Stat., § 533 [P. C. § 7864], which was held to mean, as applied to that case, that the homestead was not exempt, but subject to execution or forced sale in satisfaction of a *judgment* for unpaid portion of the purchase price of the real estate upon which the homestead was filed. There, the question was one of exemption from execution. Here, the appellants are seeking to establish a vendor's lien. In that case, upon citing our decisions, it was not only held that there is no such thing in this state as a vendor's lien, but the holding was emphasized by a more comprehensive declaration, based upon a consideration of our cases, therein mentioned, that

"The substance of our conclusion was that the mere fact that one has sold and conveyed land to another and the purchase price has not been paid *does not create any kind of lien on the land for the purchase price.*" (Italics ours.)

In consonance with that holding, another important one of a procedural character was repeated and settled

648

in that case, citing a former decision to the same effect, as follows:

"The conclusion to which we have come must have been in the mind of the court when it said in *Smith v. Allen,* 18 Wash. 1, 50 Pac. 783, 63 Am. St. Rep. 864, 39 L. R. A. 82, that 'under our statutes the vendor may obtain his judgment for the purchase money, or any part thereof, which immediately becomes a lien of record upon the land sold, and under execution he may have the land sold in satisfaction of his judgment, and that, too, freed from any homestead or other claim of exemption.' "

Denying the existence of a vendor's lien in this state, but allowing a judgment lien for purchase money to be executed against the homestead on the property, in no way violates the recording acts, and at the same time serves the policy of protecting innocent purchasers from secret liens.

However, upon the findings in this case, the appellants are entitled to a money judgment against the respondents upon the promissory note, dated August 8, 1932, according to its tenor and effect, reciting in the judgment that it is on account of the purchase price of the land, and that, if necessary, the homestead may be sold on execution to satisfy the same.

Reversed and remanded, with directions to enter judgment according to the views herein expressed.

MILLARD, C. J., MAIN, HOLCOMB, BEALS, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

TOLMAN, J. (concurring)—I concur under the ruling of the supreme court of the United States in the case of *Lockwood v. Exchange Bank,* 190 U. S. 294, 23 S. Ct. 751.